IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NATIONAL INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>IRB BRASIL RE,<br><br>Defendant. | NO. 8:23-CV-74<br><br>**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, DEFENDANT'S MOTION TO QUASH SERVICE AND VACATE DEFAULT, DEFENDANT'S AMENDED MOTION TO QUASH SERVICE AND VACATE DEFAULT, AND PLAINTIFF'S MOTION TO STRIKE AMENDED MOTION** |

This case involves a reinsurance contract allegedly issued by defendant IRB Brasil RE (IRB) to plaintiff National Indemnity Company (NICO), and NICO alleges that IRB has failed to pay its due. NICO has obtained an entry of default against IRB and now seeks a default judgment. However, IRB claims that service was defective. Presently before the Court are several motions: NICO's Motion for Default Judgment, [Filing 23](); IRB's Motion to Vacate Default and Quash Service of Process, [Filing 25](); IRB's Amended Motion to Vacate Default and Quash Service of Process, [Filing 29](); and NICO's Motion to Strike IRB's Amended Motion, [Filing 31](). For the reasons stated below, the Court denies IRB's Motions and denies as moot NICO's Motion to Strike. In addition, NICO's Motion for Default Judgment remains pending, and the Court orders NICO to submit additional evidence of its damages within 14 days of the filing of this order.

1

## I. INTRODUCTION

### A. Factual Background

The information in this background section is drawn from the Complaint, Filing 1, and from the various other factual materials submitted by the parties. *See* Filing 22; Filing 27; Filing 29; Filing 30; Filing 33. NICO is a company organized and headquartered in Nebraska. Filing 1 at 2 (¶ 5). IRB is a Brazilian entity headquartered in Rio De Janeiro, Brazil. Filing 1 at 2 (¶ 6). The dispute in this case arises out of a reinsurance contract between NICO and IRB. Filing 1 at 1 (¶ 3). Between 1973 and 1974, NICO had reinsurance coverage from IRB, which entitled NICO to be reimbursed for payments made by NICO to cover liabilities, expenses, and costs under an insurance policy issued to the State of Montana. Filing 1 at 1 (¶ 4). More recently, in 2022, NICO was required to pay out nearly $160 million to the State of Montana for liabilities arising from that insurance policy. Filing 1 at 1 (¶ 2).[1] IRB has refused to reimburse NICO for this payment, leading to the present litigation. Filing 1 at 1 (¶ 1). NICO alleges it is owed $867,168 in reinsurance from IRB. Filing 1 at 4 (¶ 21).

### B. Procedural Background

NICO originally included IRB in a multi-defendant lawsuit under the same facts filed in this Court on June 6, 2022, but NICO voluntarily dismissed IRB "to prevent a delay . . . due to the need to effect service upon IRB Brasil through the Hague Convention Service." Filing 28 at 3 (¶¶ 1–2); *see also National Indemnity Company v. Global Reinsurance Corporation of America*, No. 8:22-cv-199 (D. Neb. June 6, 2022). NICO filed the Complaint in the present action on February

---

[1] These claims arose from "asbestos-related injuries" and "alleged that the state failed to warn [plaintiffs] of potential asbestos exposure in or around the Libby Mine, a mine in Libby, Montana." Filing 1 at 3 (¶ 12).

28, 2023. Filing 1. On March 3, 2023, NICO filed its Notice of Intent to Serve Under Hague Service Convention. Filing 9. On October 7, 2023, NICO received a Certificate from the Brazilian Central Authority verifying that IRB's attorneys had been served on May 17, 2023, Filing 19. NICO filed this Certificate with the Court on October 23, 2023. Filing 19. IRB had not to this point (and still has not) filed an answer or any pre-answer, Rule 12 motions. NICO moved for an entry of default when it filed the Certificate, Filing 20, and the clerk entered default on October 24, 2023. Filing 21. On November 16, 2023, NICO filed a Motion for Default Judgment. Filing 23. On December 1, 2023, IRB filed a Motion to Quash Service of Process and Vacate Default. Filing 25. IRB then filed an Amended Motion to Quash Service of Process and Vacate Default on December 21, 2023. Filing 29. NICO filed a Motion to Strike the Amended Motion on January 8, 2024. Filing 31.

## II.  ANALYSIS

### A.  Preliminary Matter

NICO moved to strike IRB's Amended Motion to Quash Service of Process and Vacate Default. Filing 32. Having evaluated both IRB's Motion to Quash Service of Process and Vacate Default, Filing 25, and its Amended Motion to Quash Service of Process and Vacate Default, Filing 29, as well as the evidentiary material underlying each Motion, the Court concludes that both Motions fail. Therefore, the Court will consider the information contained in both Motions, and NICO's Motion to Strike IRB's Amended Motion, Filing 31, is denied as moot.

### B.  Motion to Quash Service of Process and Vacate Default

#### 1.  *The Parties' Arguments*

IRB argues that it has not been served properly. Filing 29 at 1. Specifically, IRB avers that, despite the Brazilian Central Authority having issued a Certificate of service of process on IRB,

3

"[t]he purported service on May 17, 2023 did not occur" and "the summons has never been served or delivered to IRB or its attorneys." Filing 29 at 2. IRB explains, "the purported service of process occurred at IRB's former offices, not where it was, at the time of the supposed service, actually conducting business" and "the individuals who were supposedly served were IRB's local counsel, not employees of IRB." Filing 29 at 3 (emphasis omitted). IRB further contends that vacating the entry of default is justified because IRB's "failure to respond was inadvertent" and it has "meritorious defenses" including "lack of personal jurisdiction" due to "improper service" or due to "insufficient minimum contacts," "statute of limitations," and "late notice." Filing 29 at 5–8 (capitalization omitted). Finally, IRB argues that vacating the default will not prejudice NICO. Filing 29 at 9.

In opposition, NICO argues that "the Brazilian Central Authority's Certificate of service establishes that service was perfected on IRB." Filing 28 at 5 (capitalization omitted). NICO cites Eighth Circuit caselaw for the proposition that "if the Central Authority certifies that an entity has been served, the U.S. court does not second-guess the Central Authority's representation." Filing 28 at 6 (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1389 (8th Cir. 1995) ("The . . . Central Authority's return of a completed certificate of service is prima facie evidence that the Authority's service . . . was made in compliance with [the foreign] law. . . . We decline to look behind the certificate of service to adjudicate the issues of [foreign] procedural law that the parties have raised through their submission of conflicting expert statements on the issue." (alterations in original))). NICO further argues that IRB lacks good cause to vacate the default because "IRB Brasil has known all along of NICO's claims against it" and "IRB Brasil's recent claim that it did not have actual notice of the pending lawsuit is false."

4

Filing 28 at 8. Finally, NICO argues that it "was prejudiced by IRB Brasil's tactics." Filing 28 at 10.

In reply, IRB acknowledges that the Certificate serves as prima facie evidence of service but argues that it is entitled "to present evidence showing that the service was deficient." Filing 30 at 2. IRB disputes that service was received at "Avenida Marechal Camara, 171, Castelo, Rio de Janeiro," the location designated by the Certificate, the "former" address of IRB's lawyers. Filing 30 at 2. IRB also acknowledges that NICO's counsel and another partner at IRB's counsel's law firm communicated about this case. Filing 30 at 3 n.2 ("There is no dispute that earlier communications took place between a different attorney for IRB and Plaintiff's counsel. But those communications did not notify either IRB or its counsel that service had been attempted, that a default had been entered, or that a default final judgment was being pursued. IRB and the undersigned diligently sought to address the default once it became aware of same." (record citations omitted)).

*2. Applicable Standards*

Nebraska courts mandate using "[t]he methods of service prescribed by the Hague Convention . . . where service abroad to a person in a signatory country is required." *Carlson v. Allianz Versicherungs-Aktiengesellschaft*, 844 N.W.2d 264, 273 (2014). The Eighth Circuit has explained the procedure for international service under the Hague Convention, as follows:

> The Hague Convention provides for service from abroad through a "Central Authority." Hague Convention, art. 2. Each state's Central Authority is designated to receive judicial documents from parties abroad. *Id.* The Convention states that the "authority or judicial officer competent under the law of the State in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention." *Id.* art. 3. The annexed model specifies forms for a "Request for Service Abroad of Judicial or Extrajudicial Documents," a "Certificate" of service on the reverse of the request,

> a "Summary of the Document to be Served," and a cover sheet for the documents. The Central Authority checks the documents for compliance with the Convention, serves them in accordance with its own law . . . and returns to the party requesting service a certificate that the documents have been served. *Id.*, arts. 4, 5, 6.

Northrup, 51 F.3d at 1389. The Eighth Circuit has further explained that a "Central Authority's return of a completed certificate of service is prima facie evidence that the Authority's service on [the defendant] was made in compliance with the Convention." *Id.* The *Northrup* court also suggested that a defendant may rebut this prima facie evidence is by showing "that it lacked actual notice of the proceedings" or that "technical deficiencies prejudiced it in any way." *Id.* In addition, as the Second Circuit noted, "on a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur." Burda Media, Inc. v. Viertel, 417 F.3d 292, 299 (2d Cir. 2005). Although it does not appear that the Eighth Circuit has squarely determined which party holds the burden on a motion to quash service or vacate a default, the Court sees no reason to depart from *Burda* and therefore agrees that the defendant holds the burden.

   3. Application

The authenticity of the Certificate from the Brazilian Central Authority is not in dispute. As discussed above, IRB's real dispute is over the accuracy of the Certificate's contents, *i.e.*, whether the service actually occurred in the manner described by the Certificate. Accordingly, the Certificate establishes prima facie evidence of service. Northrup, 51 F.3d at 1389. IRB "bears the burden of proof to establish that the purported service did not occur." *See* Burda Media, 417 F.3d at 299. The Court will consider whether IRB can bear its burden by showing "that it lacked actual

notice of the proceedings" or that there existed "technical deficiencies [that] prejudiced it in any way." *Northrup*, 51 F.3d at 1389.

IRB cannot show that it lacked actual notice of the proceedings. *Northrup*, 51 F.3d at 1389. IRB does not dispute that NICO's counsel communicated with "a different attorney for IRB," who also works for the firm retained by IRB for this litigation. Filing 30 at 3 n.3. Instead, IRB contends that "those communications did not notify either IRB or its counsel that service had been attempted, that a default had been entered, or that a default final judgment was being pursued." Filing 30 at 3 n.3. IRB does not dispute that "those communications" consisted of the following:

> On March 16, 2023, Attorney Donald Frechette, a partner with the firm of Locke Lord LLP, communicated on behalf of IRB Brasil with NICO's counsel Michael Knoerzer. Attorney Frechette is counsel of record for defendants Global Reinsurance Corporation of America and R&Q Reinsurance Company in the 199 Action and therefore receives notices of all activity in that docket. Attorney Frechette proposed that NICO make a discounted settlement offer to IRB Brasil to avoid "jurisdictional and timing issues" which arose as a consequence of IRB Brasil being based in Brazil. A subsequent conversation between the counsel did not resolve IRB Brasil's demand.

Filing 28 at 3 (¶ 5) (record citations omitted). The Court concludes that these failed settlement negotiations showed that IRB had notice of the proceedings. *Northrup*, 51 F.3d at 1389; *see also* Filing 30 at 3 (IRB stating it "the pendency of this lawsuit [is a known] fact that is not disputed").

IRB also cannot show that "technical deficiencies prejudiced it in any way." *Northrup*, 51 F.3d at 1389. IRB's main contention is as follows:

> Specifically, Plaintiff's opposition mistakenly states that the summons was served on IRB's attorney's at Avenida Marechal Camara, 171, Castelo, Rio de Janeiro. To the contrary, IRB's Amended Motion provides sworn statements establishing that no such service of the summons did or even could have occurred. Not only have IRB's attorneys never been served with the Summons, the Avenida Marechal Camara address was not the attorneys' address at the time of the purported service.

7

This argument is plainly contradicted by IRB's own evidence, which states, "the address of Avenida Marechal Camara, 171, Castelo, Rio de Janeiro is a former address for IRB, having moved to its present facilities, located at Avenida República do Chile, 330, 3rd floor, Rio de Janeiro on June 1st, 2023." Filing 29-1 at 2 (¶ 6). The Certificate designates the date of service as May 17, 2023, before IRB allegedly moved facilities. Filing 19-1 at 1. Thus, IRB has also failed to adduce any evidence of "technical deficiencies [that] prejudiced it in any way." *Northrup*, 51 F.3d at 1389.

Because IRB failed to rebut NICO's prima facie case of effective service of process, IRB's Motion to Quash Service and Vacate Default, Filing 30, is denied.

### C. Default Judgment

#### 1. *Standards for Establishing Damages*

"A plaintiff seeking default judgment 'must still prove its actual damages to a reasonable degree of certainty.'" *Erickson v. Sawyer*, No. 21-CV-2536, 2023 WL 166952, at * 6 (D. Minn. Jan. 12, 2023) (quoting *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818-19 (8th Cir. 2001)). "A district court may determine damages by computing from the facts of record the amount that the plaintiff is lawfully entitled to recover and enter judgment accordingly." *Id.*; *see also KD*, 1 F.4th at 601 (reiterating that "[i]t is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly" (quoting *Stephenson v. El-Batrawi*, 524 F.3d 907, 915 (8th Cir. 2008), in turn quoting *Pope v. United States*, 323 U.S. 1, 12 (1994))). "Damages may be proven by sworn affidavit and supporting documentation." *900 Broadway v. AltosGroups*, No. 4:20-CV-00461, 2021 WL 681433, at *2 (W.D. Mo. Feb. 22, 2021) (citation omitted).

8

### 2. *NICO Has Not Adequately Established Damages*

After reviewing the pertinent material provided by NICO, including Filing 22-2, Filing 22-3, Filing 22-4, and Filing 22-5 at 2 (¶¶ 9, 11),[2] the Court is unable to determine "actual damages [with] a reasonable degree of certainty" or "comput[e] from the facts of record the amount that the plaintiff is lawfully entitled to recover." The Court has tried without success to determine how the $867,586 sum was calculated from the limited information provided by NICO. It appears that NICO is claiming that IRB owes approximately 0.5% of the total sum paid by NICO. The Court also notes that the number provided by NICO in its "proof of loss chart," which measures damages at $867,586, Filing 22-4 at 3, is inconsistent with the number in its Motion for Default Judgment, which measures damages at $867,168. Filing 23 at 8. The Court cannot award damages unless NICO thoroughly explains its calculation methodology.

Within 14 days of the filing of this order, NICO must file another declaration with the Court that carefully explains how it arrived at its measure of damages. The Court declines to compute interest or attorneys' fees until NICO establishes the sum of damages.

### III. CONCLUSION

For these reasons, the Court denies IRB's Motion to Quash Service and to Vacate Default. However, NICO's Motion for Default Judgment remains pending. The Court orders NICO to file further evidence of its damages within 14 days of the publication of this order. Accordingly,

IT IS ORDERED:

1. IRB's Motion to Quash Service of Process and to Vacate Clerk's Default, Filing 25, is denied;

---

[2] Filing 22-1 is almost entirely illegible.

9

2. IRB's Amended Motion to Quash Service of Process and to Vacate Clerk's Default, Filing 29, is denied; and

3. NICO's Motion to Strike IRB's Amended Motion to Vacate Default and Quash Service, Filing 31, is denied as moot.

Dated this 14th day of February, 2024.

BY THE COURT:

Brian C. Buescher
United States District Judge