IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NATIONAL INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>IRB BRASIL RE,<br><br>Defendant. | NO. 8:23-CV-74<br><br>MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND DEFENDANT'S MOTION TO RECONSIDER |

This case involves a reinsurance contract allegedly issued by defendant IRB Brasil RE (IRB) to plaintiff National Indemnity Company (NICO) on which NICO alleges that IRB has failed to pay its due. NICO has obtained an entry of default against IRB and now seeks a default judgment. The Court previously rejected IRB's argument that service was defective and determined that NICO is entitled to a default judgment, provided that NICO can adequately show its damages entitlement. Filing 37. Presently before the Court are two motions: NICO's Motion for Default Judgment, Filing 23, and IRB's Motion to Reconsider, Filing 38. For the reasons stated below, the Court denies IRB's Motion to Reconsider and grants NICO's Motion for Default Judgment.

## I. INTRODUCTION

### A. Factual Background

The information in this background section is drawn from the Complaint, Filing 1, and from the various other factual materials submitted by the parties. *See* Filing 22; Filing 27; Filing

1

29; Filing 30; Filing 33. NICO is a company organized and headquartered in Nebraska. Filing 1 at 2 (¶ 5). IRB is a Brazilian entity headquartered in Rio De Janeiro, Brazil. Filing 1 at 2 (¶ 6). The dispute in this case arises out of a reinsurance contract between NICO and IRB. Filing 1 at 1 (¶ 3). Between 1973 and 1974, NICO had reinsurance coverage from IRB, which entitled NICO to be reimbursed for payments made by NICO to cover liabilities, expenses, and costs under an insurance policy issued to the State of Montana. Filing 1 at 1 (¶ 4). More recently, in 2022, NICO was required to pay out nearly $160 million to the State of Montana for liabilities arising from that insurance policy. Filing 1 at 1 (¶ 2).[1] IRB has refused to reimburse NICO for this payment, leading to the present litigation. Filing 1 at 1 (¶ 1). NICO alleges it is owed $867,168 in reinsurance from IRB. Filing 1 at 4 (¶ 21).

### B. Procedural Background

NICO originally included IRB in a multi-defendant lawsuit under the same facts filed in this Court on June 6, 2022, but NICO voluntarily dismissed IRB "to prevent a delay . . . due to the need to effect service upon IRB Brasil through the Hague Service Convention." Filing 28 at 2 (¶¶ 1–2); *see also National Indemnity Company v. Global Reinsurance Corporation of America*, No. 8:22-cv-199 (D. Neb. June 6, 2022). NICO filed the Complaint in the present action on February 28, 2023. Filing 1. On March 3, 2023, NICO filed its Notice of Intent to Serve Under Hague Service Convention. Filing 9. On October 7, 2023, NICO received a Certificate from the Brazilian Central Authority verifying that IRB's attorneys had been served on May 17, 2023, Filing 19. NICO filed this Certificate with the Court on October 23, 2023. Filing 19. IRB had not to this point

---

[1] These claims arose from "asbestos-related injuries" and "alleged that the state failed to warn [plaintiffs] of potential asbestos exposure in or around the Libby Mine, a mine in Libby, Montana." Filing 1 at 3 (¶ 12).

2

(and still has not) filed an answer or any pre-answer Rule 12 motion. NICO moved for an entry of default when it filed the Certificate, Filing 20, and the Clerk of Court entered default on October 24, 2023. Filing 21. On November 16, 2023, NICO filed a Motion for Default Judgment. Filing 23. On December 1, 2023, IRB filed a Motion to Quash Service of Process and Vacate Default. Filing 25. IRB then filed an Amended Motion to Quash Service of Process and Vacate Default on December 21, 2023. Filing 29. NICO filed a Motion to Strike the Amended Motion on January 8, 2024. Filing 31. On February 14, 2024, the Court denied IRB's Motions and determined that NICO was entitled to default judgment. Filing 37. However, the Court ordered NICO to provide the Court with further evidence of its damages to enable the Court to enter the default Judgment. Filing 37 at 9. NICO complied with this order on February 28, 2024. Filing 40. However, on February 27, 2024, IRB filed a Motion to Reconsider. Filing 38. Both NICO's Motion for Default Judgment and IRB's Motion to Reconsider are presently before the Court.

## II. ANALYSIS

### A. Motion to Reconsider

IRB asks the Court to reconsider its previous order, Filing 37, denying IRB's Motions to set aside a default previously entered against IRB by the Clerk of Court, Filing 21. IRB brings its Motion under Rule 60(b). Filing 39 at 1. Rule 60(b) provides,

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> **(1)** mistake, inadvertence, surprise, or excusable neglect;
>
> **(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> **(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

3

>    **(4)** the judgment is void;
>
>    **(5)** the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
>    **(6)** any other reason that justifies relief.

Fed. R. Civ. P. 60(b). The Eighth Circuit Court of Appeals has elaborated on these standards, as follows:

> Rule 60(b) "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." *Jones v. Swanson*, 512 F.3d 1045, 1048 (8th Cir. 2008) (quotation omitted); *Noah v. Bond Cold Storage*, 408 F.3d 1043, 1045 (8th Cir. 2005) (per curiam). "We will reverse a district court's ruling on a Rule 60(b) motion only if there was a clear abuse of the court's broad discretion." *Bennett v. Dr Pepper/Seven Up, Inc.*, 295 F.3d 805, 807 (8th Cir. 2002). Relevant here, "[a]n error of law is necessarily an abuse of discretion." *City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147, 1152 (8th Cir. 2013).

*Williams*, 891 F.3d at 706; accord *Wagstaff & Cartmell, LLP v. Lewis*, 40 F.4th 830, 842 (8th Cir. 2022) ("[Federal] Rule [of Civil Procedure] 60(b) provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." (quoting *In re Levaquin Prod. Liab. Litig.*, 739 F.3d 401, 404 (8th Cir. 2014)).

Thus, "[i]n the civil context, our court has been clear that a motion for reconsideration 'serve[s] the limited function of correcting manifest errors of law or fact or ... present[ing] newly discovered evidence.'" *United States v. Luger*, 837 F.3d 870, 875 (8th Cir. 2016) (quoting *Bradley Timberland Res. v. Bradley Lumber Co.*, 712 F.3d 401, 407 (8th Cir. 2013)); *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010) ("Motions for reconsideration [pursuant to Rule 60(b)] serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988))). This limitation means that "[a] court of appeals 'will typically not consider an issue or a

4

new argument raised for the first time in a motion for reconsideration [pursuant to Rule 60(b)] in the district court.'" *Brown v. Louisiana-Pac. Corp.*, 820 F.3d 339, 348 (8th Cir. 2016) (quoting *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 425 (5th Cir. 2014), *cert. denied*, 574 U.S. 1156 (2015)). Nor will a district court. *Arnold*, 627 F.3d at 721 (explaining that a motion for reconsideration pursuant to Rule 60(b) "is also not the appropriate place to 'tender new legal theories for the first time'" (quoting *Hagerman*, 839 F.2d at 414)). Similarly, Rule 60(b) motions are not appropriate simply to reargue the merits of a claim or prior motion. *Broadway v. Norris*, 193 F.3d 987, 989–90 (8th Cir. 1999) ("In their 'motion for reconsideration,' defendants did nothing more than reargue, somewhat more fully, the merits of their claim of qualified immunity. This is not the purpose of Rule 60(b). It authorizes relief based on certain enumerated circumstances (for example, fraud, changed conditions, and the like). It is not a vehicle for simple reargument on the merits. This ground alone is sufficient to prevent a holding that the District Court abused its discretion in denying the motion.").

In its Brief supporting reconsideration, IRB contends that the Court's order "improperly allows Plaintiff to proceed directly to a default final judgment without a final adjudication of the Court's personal jurisdiction, including both the validity of service of process on IRB and IRB's minimum contacts to satisfy due process." Filing 39 at 2. IRB argues that the Court committed manifest error by failing to "provid[e] IRB with a vehicle to challenge the existence of this Court's jurisdiction." Filing 39 at 2. In response, NICO contends that "IRB Brasil had its opportunity to make adequate showings of such purported meritorious defenses and did not." Filing 41 at 2–3. NICO further argues that "[h]ad [IRB] moved to dismiss or answered, IRB Brasil could have provided additional evidence to force NICO to prove the elements of service at trial, as it pleads

5

for the ability to do in its motion for reconsideration." Filing 41 at 5. Consequently, NICO argues, "IRB Brasil's motion fails to meet the demanding standard a Rule 60(b) motion requires to justify extraordinary relief." Filing 41 at 7. The Court agrees with NICO.

As IRB points out, "[a] defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982) (citing *Baldwin v. Traveling Men's Assn.*, 283 U.S. 522, 525 (1931)). The same is true for IRB here: IRB can still challenge the Court's judgment on jurisdictional grounds *in a collateral proceeding*; however, it is far too late to challenge personal jurisdiction in the present proceeding. Because IRB never filed a pre-answer motion or answer to NICO's complaint, despite NICO's compliance with the statutorily mandated procedure for service of process on a foreign corporation, IRB risked—and ultimately suffered—default judgment. IRB's arguments to the contrary are without merit. IRB could have but chose not to challenge the Court's personal jurisdiction in a timely manner, but IRB instead chose to file Motions to Vacate after default had been entered. IRB plainly cannot challenge personal jurisdiction for the first time in this litigation on a motion to reconsider after default has been entered and a motion to vacate the default has been denied. Because the Court did not commit "manifest error" in denying those Motions, *Luger*, 837 F.3d at 875, IRB's Motion to Reconsider is denied.

### B. Default Judgment Damages

#### 1. Standards for Establishing Damages

"A plaintiff seeking default judgment 'must still prove its actual damages to a reasonable degree of certainty.'" *Erickson v. Sawyer*, No. 21-CV-2536, 2023 WL 166952, at * 6 (D. Minn.

Jan. 12, 2023) (quoting *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818-19 (8th Cir. 2001)). "A district court may determine damages by computing from the facts of record the amount that the plaintiff is lawfully entitled to recover and enter judgment accordingly." *Id.*; *see also KD v. Douglas Cnty. Sch. Dist. No. 001*, 1 F.4th 591, 601 (8th Cir. 2021) (reiterating that "[i]t is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly" (quoting *Stephenson v. El-Batrawi*, 524 F.3d 907, 915 (8th Cir. 2008), in turn quoting *Pope v. United States*, 323 U.S. 1, 12 (1994))). "Damages may be proven by sworn affidavit and supporting documentation." *900 Broadway v. AltosGroups*, No. 4:20-CV-00461, 2021 WL 681433, at *2 (W.D. Mo. Feb. 22, 2021) (citation omitted).

2. NICO Has Adequately Established Damages

NICO complied with the Court's previous order, Filing 37, to submit additional evidence of its damages. Filing 40. The Court can now evaluate NICO's damages attributable to IRB "to a reasonable degree of certainty." *Erickson*, 2023 WL 166952, at *6. NICO was required to pay the State of Montana several different types of damages under a settlement agreement related to NICO's insurance of the State for asbestos-related injuries suffered by individuals in the Libby Mines. These damages include "Loss costs" (the settlement amount) of $81,000,000; "Defense costs" of $22,064,009.69; pre-judgment interest costs on the settlement amount of $24,588,519; pre-judgment interest costs on the defense amount of $4,902,120.42; $21,112,433.85 in post-judgment interest; and $3,570,410.44 in reimbursement of State's attorney's fees. Filing 40-1 at 9 (¶¶ 22–25). In total, NICO paid $157,237,493 to the State of Montana under its insurance policy. Filing 40-1 at 9 (¶ 26). NICO incurred an additional $16,187,355 in attorneys' fees and expenses

7

while litigating the matter in Montana courts, for a total out-of-pocket cost of $173,424,848. Filing 40-1 at 10 (¶ 27).

NICO also submitted a document showing the reinsurance pool participants, which included IRB as a 6.67% participant in the pool. Filing 40-1 at 6 (¶ 13); Filing 40-5. The reinsurance pool is liable for "a 50% share of $900,000, or $450,000 per occurrence." Filing 40-1 at 11 (¶ 29); *see also* Filing 40-1 at 5. "However, because the Fortress Re Certificate provided reinsurance coverage for only the first year of the two-year Montana Policy, and because each occurrence applied across the two years, the $450,000 amount per occurrence must be split in half. Thus, the Fortress Re Certificate provided coverage of $225,000 per occurrence." Filing 40-1 at 11 (¶ 29). Accordingly, IRB's liability is 6.67% of $225,000 per occurrence, or $15,008 per occurrence. Because there were 27 occurrences, IRB's liability for the "Loss costs" (the settlement amount) is $405,216, which is 0.500267% of the total "Loss costs" of $81,000,000. NICO uses this 0.500267% proportion to determine IRB's liability for the other categories of expenses. Filing 40-1 at 12 (¶ 30). IRB's proportion of the other expenses (everything besides the settlement amount) paid by NICO ($92,424,848.40) amounts to $462,371.01. NICO apparently rounds this figure down to $462,370. Filing 40-1 at 12 (¶ 32). Thus, NICO attributes to IRB $405,216 for its share of the settlement amount and $462,370 for its share of the other expenses paid by NICO. The sum of these figures is $867,586, the amount sought by NICO for the default. Filing 40-1 at 12 (¶ 34). Because NICO has "prove[n] its actual damages to a reasonable degree of certainty," *Erickson*, 2023 WL 166952, at *6, default judgment in the amount of $867,586 is appropriate.

### C. Attorneys' Fees

NICO also moved for attorneys' fees. *See* Filing 23 at 5–6. Nebraska law provides, "In all cases when the beneficiary or other person entitled thereto brings an action upon any type of insurance policy, . . . the court, upon rendering judgment . . . shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his or her recovery[.]" Neb. Rev. Stat. 44-359. NICO contends it is entitled to $12,115 in attorneys' fees. Filing 25 at 6. The basis for this figure is 10.3 hours billed by Jason W. Grams at a rate of $450 per hour; 16.4 hours billed by David J. Schmidt at a rate of $275 per hour; and 10.8 hours billed by David A. Changstrom at a rate of $275 per hour. Filing 22-6. Although a declaration by Jason W. Grams, attorney for NICO, states that NICO's firm incurred an additional $2,250.00 in costs, Filing 22-6 at 2, NICO's Motion nowhere asks for costs, *see generally* Filing 23, so the Court does not consider these costs in its calculation. The Court agrees that these fees are reasonable within the meaning of Neb. Rev. Stat. 44-359. Although the $450 per hour figure is higher than the undersigned generally recognizes as being a reasonable prevailing rate in this legal community, the Court notes the complexity of service on a foreign corporation, which counsel performed competently and which led counsel to secure a default judgment for NICO. The Court further notes that Jason W. Grams is a partner at the firm, has been a licensed attorney for over fifteen years, and served as a judicial law clerk for another judge of this Court and for a judge on the Eighth Circuit Court of Appeals. Accordingly, the Court awards the full $12,115 in attorneys' fees.

### D. Pre- and Post-Judgment Interest

NICO argues it is entitled to pre- and post-judgment interest. Regarding pre-judgment interest, Nebraska law provides, "Unless otherwise agreed, interest shall be allowed at the rate of

9

twelve percent per annum on money due on any instrument in writing[.]" Neb. Rev. Stat. § 45-104. Nebraska law further provides that interest accrues "from the date of the plaintiff's first offer of settlement." Neb. Rev. Stat. § 45-103.02. Regarding post-judgment interest, 28 U.S.C. § 1961(a) provides, "Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." The Court takes judicial notice that the rate of the average 1-year constant maturity Treasury yield for the calendar week of April 1, 2024, to April 5, 2024, was 5.04%. Accordingly, NICO is entitled to prejudgment interest under Neb. Rev. Stat. § 25-104 at a rate of 12% per annum for amounts that accrued between June 6, 2023, the date NICO billed IRB, and the date of judgment. NICO is also entitled to post-judgment interest that will accrue at a rate of 5.04%.

### III. CONCLUSION

For these reasons, the Court denies IRB's Motion to Reconsider and grants NICO's Motion for Default Judgment. NICO is entitled to default judgment in the amount of $867,586; attorney's fees in the amount of $12,115; pre-judgment interest at a rate of 12% per annum for amounts that accrued between June 6, 2023, and the date of judgment; and post-judgment interest that will accrue at a rate of 5.04%. Accordingly,

IT IS ORDERED:

1. IRB's Motion to Reconsider, Filing 38, is denied; and

2. NICO's Motion for Default Judgment, Filing 23, is granted.

IT IS FURTHER ORDERED that a separate judgment shall enter accordingly.

Dated this 8th day of April, 2024.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge